BURLINGTON NORTHERN RAILROAD CO., Chicago & North Western Transportation Co., Green Bay & Western Railroad Co., Soo Line Railroad Co., and Richard B. Ogilvie, Trustee of the Property of Chicago, Milwaukee, St. Paul & Pacific Railroad Co., Debtor, Plaintiffs,

v.

The DEPARTMENT OF REVENUE OF the STATE OF WISCONSIN, Defendant.

No. 81–C–772.

United States District Court, W.D. Wisconsin.

Sept. 2, 1983.

John S. Best of Michael, Best & Friedrich, Milwaukee, Wis., for plaintiffs.

John J. Glinski, Asst. Atty. Gen. of State of Wis., Department of Justice, Madison, Wis., for defendant.

## OPINION AND ORDER

JAMES E. DOYLE, District Judge.

This is a civil action for declaratory and injunctive relief and is presently before the court on plaintiffs' motion for summary judgment pursuant to Fed.R.Civ.P. 56. Plaintiff claims that enforcement of the "Wisconsin State Property Tax Relief Law," Chapter 20, Wisconsin Laws of 1981, § 1174 violates the Railroad Revitalization and Regulatory Reform Act 1976, 49 U.S.C. § 11503 (hereinafter referred to as the 4–R Act).

The 4–R Act is the sole basis for relief that I will consider. Under *California v. Grace Brethren Church,* 457 U.S. 393, 102 S.Ct. 2498, 73 L.Ed.2d 93 (1982), and by reason of 28 U.S.C. § 1341, this court lacks jurisdiction to decide whether the Wisconsin Property Tax Relief Law violates the uniformity clause of the Wisconsin Constitution. Plaintiffs agree. They have filed an action in a state court to resolve the uniformity clause issue. The 4–R Act provides a specific exception to 28 U.S.C. § 1341 and grants jurisdiction to this court to enforce 4–R by injunction in a proper case. 49 U.S.C. § 11503(c).

The factual basis for the plaintiffs' summary judgment motion is presented in the form of a stipulation. I find there is no genuine issue with respect to the facts contained in the stipulation which are set forth below under the heading "Facts."

### FACTS

Plaintiff, Burlington Northern Railroad Company ("Burlington Northern"), is a corporation organized and existing under the laws of the State of Delaware with its principal office in St. Paul, Minnesota. Burlington Northern is a "railroad company" within the meaning of Wis.Stat. § 76.02(2) and a "rail carrier" providing transportation subject to the jurisdiction of the Interstate Commerce Commission under subchapter I of Chapter 105 of Title 49 United States Code. Burlington Northern is the owner of "rail transportation property" within the meaning of 49 U.S.C. § 11503(a)(3), some of which is located within the State of Wisconsin.

Plaintiff, Chicago & North Western Transportation Co. ("Chicago & North Western"), is a corporation organized and existing under the laws of the State of Delaware with its principal office in Chicago, Illinois. Chicago & North Western is a "railroad company" within the meaning of Wis.Stat. § 76.02(2) and a "rail carrier" providing transportation subject to the jurisdiction of the Interstate Commerce Com-

mission under subchapter I of Chapter 105 of Title 49 United States Code. Chicago & North Western is the owner of "rail transportation property" within the meaning of 49 U.S.C. § 11503(a)(3), none of which is located within the State of Wisconsin.

Plaintiff, Green Bay & Western Railroad Co. ("Green Bay"), is a corporation organized and existing under the laws of the State of Wisconsin with its principal office in Green Bay, Wisconsin. Green Bay is a "railroad company" within the meaning of Wis.Stat. § 76.02(2) and a "rail carrier" providing transportation subject to the jurisdiction of the Interstate Commerce Commission under subchapter I of Chapter 105 of Title 49 United States Code. Green Bay is the owner of "rail transportation property" within the meaning of 49 U.S.C. § 11503(a)(3), some of which is located within the State of Wisconsin.

Plaintiff, Soo Line Railroad Company ("Soo Line"), is a corporation organized and existing under the laws of the State of Minnesota with its principal office in Minneapolis, Minnesota. Soo Line is a "railroad company" within the meaning of Wis.Stat. § 76.02(2) and a "rail carrier" providing transportation subject to the jurisdiction of the Interstate Commerce Commission under subchapter I of Chapter 105 of Title 49 United States Code. Soo Line is the owner of "rail transportation property" within the meaning of 49 U.S.C. § 11503(a)(3), some of which is located within the State of Wisconsin.

Richard B. Ogilvie is the duly appointed Trustee in Bankruptcy for the reorganization of the Chicago, Milwaukee, St. Paul & Pacific Railroad Co. ("Chicago, Milwaukee") and brings this action on behalf of the Chicago, Milwaukee. Chicago, Milwaukee is a corporation organized and existing under the laws of the State of Wisconsin with its principal office in Chicago, Illinois. Chicago, Milwaukee is a "railroad company" within the meaning of Wis.Stat. § 76.02(2) and a "rail carrier" providing transportation subject to the jurisdiction of the Inter-

state Commerce Commission under subchapter I of Chapter 105 of Title 49 United States Code. Chicago, Milwaukee is the owner of "rail transportation property" within the meaning of 49 U.S.C. § 11503(a)(3), some of which is located within the State of Wisconsin.

The defendant, Department of Revenue, is an agency of the State of Wisconsin and pursuant to Chapter 76, Wisconsin Statutes, is charged with the duty of assessing the value of the operating rail transportation property of each of the plaintiffs located within the State of Wisconsin, computing and determining the rate of taxation to be imposed upon such property, levying an ad valorem property tax upon each plaintiff in accordance with the assessment and rate so determined, and collecting such property tax from each of the plaintiffs.

Chapter 70, Wisconsin Statutes, provides for the assessment of all taxable general property, including commercial and industrial property, within the State of Wisconsin and for the levying and collection of an ad valorem tax thereon. Wis.Stats. §§ 70.01 through 70.995. Local assessors, either at the county or municipal level, are charged with the responsibility of evaluating the property within the political boundaries of their jurisdiction and preparing the assessment rolls. Wis.Stats. §§ 70.29, 70.30, 70.32, 70.34, 70.99.

An exception is made for manufacturing property which is assessed by the Department of Revenue of the State of Wisconsin ("Department"). Wis.Stat. § 70.995. The Department prepares the manufacturing property assessment roll for each municipality and delivers the equated manufacturing assessment roll to the various municipal clerks to be annexed to the municipal assessment roll prepared by the local assessor. Wis.Stat. § 70.995(8)(e).

Once the assessment rolls are prepared by the local assessors they are reviewed by the municipal clerks and delivered to the various boards of review. Wis.Stat. § 70.45.

(In counties in which a county assessor system has been established, a county board of review receives the assessment rolls and hears objections thereto. Wis.Stat. § 70.-99(10)). Provisions are made whereby the individual property taxpayer can challenge the amount of the assessment placed upon his property before the boards of review. Wis.Stat. § 70.47. (Objections to the assessment of manufacturing property are made in accordance with Wis.Stat. § 70.-995(8)). After making any necessary corrections, the boards of review return the assessment rolls to the municipal clerks.

The clerks then prepare a statement of the aggregate value of several classes and types of property within the municipality and provide the statement to the supervisor of assessments for the applicable taxation district. Wis.Stat. § 70.53. The supervisors, after reviewing and correcting the statements as needed, transmit copies of the statements to the county clerks with respect to the municipalities within each county and to the Department. Id.

The Department, prior to August 15 of each year, prepares a list of all municipalities within the State, setting forth the value of all property subject to general property taxation within each municipality and similarly prepares a list of counties. Wis. Stat. § 70.57. A total of the assessments of the counties is then made by the Department. This total is known as the state assessment and is the full market value of all taxable property within the State. Wis. Stat. § 70.575.

During August of each year the Department of Administration computes the state tax chargeable against each county based upon the county assessments prepared by the Department of Revenue. The county clerks are then informed of the state taxes levied against their individual counties. Wis.Stat. § 70.60. After the county boards have determined the amount of taxes to be levied for county purposes, the county clerks apportion the county taxes charged to the county among the municipalities within the county and certify the apportionment of the applicable municipal clerks. Wis.Stats. §§ 70.62, 70.63.

The municipal clerks then apportion the full amount of all state, county, school and municipal taxes among the individual owners of assessed property, including commercial and industrial property, within the municipality based upon the relative values of such properties. Wis.Stat. § 70.66.

Certain property otherwise taxable under Chapter 70, Wisconsin Statutes, is exempt therefrom because of special taxes imposed pursuant to other provisions of Wisconsin law. Wis.Stat. § 70.112. The operating property of railroad companies, such as plaintiffs, is so exempt. Such property is subject to the ad valorem tax provisions of Chapter 76, Wisconsin Statutes. Wis.Stat. §§ 76.01, 76.02(10).

Chapter 76, Wisconsin Statutes, provides for the assessment of all operating railroad property located within this state and the levying and collection of an ad valorem property tax thereon. Railroad companies, having property located within this state, are required to submit to the Department an annual report specifying certain information as required by the Department. Wis.Stat. § 76.04. Based upon these annual reports the Department is required to assess the railroad property of each railroad located within the state at full market value. Wis.Stat. § 76.07(1).

The Department notifies the railroad companies of the amount of their assessments and provisions are made for contesting the assessments. Wis.Stat. § 76.08.

Based upon the assessed value of the railroad property, the Department levies a property tax upon the railroad companies at a state average rate of taxation. Wis.Stat. § 76.13(1). The average rate is determined by the Department by dividing the aggregate state property taxes including all county and local taxes by the state assessment. Wis.Stat. § 76.12.

Since 1963 the Wisconsin Legislature has appropriated from state-collected taxes an amount to be distributed by the Depart-

ment of Administration for property tax relief. Prior to the enactment of Chapter 20, Wisconsin Laws of 1981, the funds so appropriated were distributed to qualifying municipalities and to taxpayers subject to taxation under Chapter 76, Wisconsin Statutes.

The appropriated funds were allocated between the municipalities and the taxpayers subject to taxation under ·Chapter 76 based upon the relative amount of taxes paid by taxpayers subject to taxation under Chapter 76 as compared to all property taxes paid within the state and computed upon three-year averages. Wis.Stat. § 79.-10(1a) (1979).

The distributions to the municipalities was required to be made on the first Monday in March of each year by the Department of Administration. On or before December 1 of the year preceding the distribution the Department was required to notify each municipal clerk of the amount to be distributed to his municipality the following March. Wis.Stat. §§ 79.10(1), 79.10(3).

The full amount of the municipal distributions was required to be redistributed to the property taxpayers of the municipality in allocable shares based upon the value of each taxpayer's assessed property. The redistribution was required to be made in the form of a tax credit applied upon the property tax bills for the year preceding the actual distribution of the funds by the Department of Administration. Wis.Stat. § 79.10(3).

After completing the allocation of the various taxes as specified in paragraph 15 supra and computing the property tax credits to which each taxpayer was entitled, the municipal clerks prepared the property tax bills and mailed them to each property taxpayer appearing on the municipal property tax rolls. The bills individually set forth the amount of taxes attributable to the state, county, school and local taxes and separately stated the property tax credit given. The tax credit directly reduced the amount of property tax which each individual taxpayer, including owners of commercial and industrial property, would otherwise have been required to pay. Wis.Stat. § 79.11.

Certain property, including railroad property, is subject to taxation under Chapter 76 and therefore is not taxed by the various municipalities. Consequently, the railroads to the extent they are taxed under Chapter 76 could not participate in the distributions made to the municipalities. The allocated portion of the appropriate funds was therefore distributed as a direct tax credit which appeared on their property tax bill issued by the Department. Wis.Stat. § 79.10(1a) (1979). These credits, like those to other property taxpayers, directly reduced the amount of the property taxes which the railroad companies would otherwise have been required to pay.

Chapter 20, Wisconsin Laws of 1981, amended the Wisconsin property tax credit system by eliminating the credits previously granted to taxpayers, including railroad companies, subject to taxation under Chapter 76. Under Chapters 20 and 317, Laws of 1981, the total amount of property tax credits payable under § 79.10 will equal $260.0 million in 1982 and $353.5 million (estimated) in 1983. These amounts will be distributed to municipalities and required to be redistributed in the form of tax credits to all property taxpayers, including owners of commercial and industrial property, who appear on the municipal property tax rolls as in previous years.

Railroad companies to the extent they are taxed under Chapter 76 do not appear on the municipal property tax rolls and have not received the property tax credits on their 1981 property tax bills which other taxpayers, including industrial and commercial property owners, will receive. Wis. Stat. § 79.10.

The following chart sets forth the statewide aggregate net taxes and equalized values of general property subject to ad valorem taxes in Wisconsin as well as the state average effective tax rates for taxes levied in 1980 payable in 1981 for the classes of properties listed.

| | Net Taxes [2] | Equalized Value | Effective Tax Rate |
|---|---|---|---|
| I. GENERAL PROPERTY [1] | 1,901,103,160 | 108,480,469,889 | .0175248 |
| A. Real Property | 1,812,318,155 | 100,954,744,000 | |
| 1. Residential | 1,126,017,984 | 61,674,712,250 | .0182574 |
| 2. Mercantile | 311,229,140 | 14,924,562,600 | .0208535 |
| 3. Manufacturing | 92,068,732 | 4,835,876,500 | .0190387 |
| 4. Agriculture | 256,832,016 | 17,197,094,700 | .0149346 |
| 5. Other | 26,170,283 | 2,322,497,950 | .0112682 |
| B. Line A Personal Property | 16,488,408 | 3,850,542,659 | .0042821 |
| C. Personalty | 71,494,466 | 3,675,183,230 | .0194533 |
| 1. Logs and Other Forest Products | 5,487 | 319,580 | .0171694 |
| 2. Boats and Other Watercraft (not exempt) | 132,378 | 8,085,370 | .0163725 |
| 3. Public Utilities (locally assessed) | 31,651 | 1,538,800 | .0205686 |
| 4. Machinery, Tools, and Patterns | 23,799,962 | 1,242,623,360 | .0191530 |
| 5. Furniture, Fixtures, and Office Equipment | 35,699,428 | 1,771,432,980 | .0201529 |
| 6. All Other Personal Property | 11,825,285 | 651,183,140 | .0181597 |

Definitions of the classes of properties listed in the chart in the preceding paragraph are as follows:

### Real Property

*Residential:*

The residential class includes all property where the predominate use is for living purposes. It also includes vacant land in cities and villages where the most likely use would be for residential development. Mobile homes assessed as real property and not located in mobile homes parks or courts are classified as residential. Apartment buildings of up to three units are also classified as residential.

*Mercantile:*

The mercantile classification includes all land and improvements primarily devoted to buying and reselling goods for a profit. It also includes the providing of services in support of residential, agricultural, manufacturing, and forest uses.

*Manufacturing:*

The manufacturing classification includes all lands, building, structures and other real property used, or if vacant, designed for use in manufacturing, assembling, processing, fabricating, making or milling tangible personal property for profit.

*Agricultural:*

This classification includes establishments primarily engaged in agricultural production and related services.

*Other:*

This classification includes forest, swamp and wasteland.

### Line A Personal Property

Line A personal property includes:

(1) The number and value of "neat" cattle

1. All the taxable real and personal property defined in §§ 70.03 and 70.04 except that which is taxed under §§ 70.37 to 70.395. General property includes manufacturing property subject to § 70.995, but assessment of that property shall be made according to § 70.995.

2. Gross taxes less Chapter 79 tax credits.

(2) The number and value of sheep and lambs

(3) The number and value of swine

(4) The value of all other livestock

(5) The value of merchants' stock

(6) The value of manufacturers' stock

*Livestock:*

The first four items of personal property all refer to livestock over four months of age and include cattle, sheep, swine, poultry, goats, and furbearing animals such as rabbits, mink, fox, and nutria. If any livestock is found to have been omitted from assessment, the Supervisor of Equalization should be contacted for valuation information.

*Inventories:*

Personal property items 5 and 6 refer to the inventories of merchants and manufacturers. The term "inventory" is used to designate all of the items of tangible personal property which (1) are held for sale in the ordinary course of business, (2) are in the process of production for such sale, or (3) are to be currently consumed in the production of goods or services to be available for sale. The principal types of assets included under inventories are:

1. Merchandise
2. Materials
3. Supplies
4. Work in process
5. Finished goods

*Merchandise:*

The term merchandise includes all classes of commodities held by dealers for sale.

*Materials:*

Materials consist of goods purchased by a manufacturer or converter with the intention of physically incorporating them into the final product of the manufacturing or conversion operation. Such goods may be raw materials, or they may be partially fabricated commodities secured from other concerns. For example, for one company

the materials may be raw cotton; for another they may consist of woven cloth. A wide range of types of goods from ore to complex electric generators may be included in this category.

*Supplies:*

The term supplies covers a great variety of commodities which, though ordinarily not physically incorporated into the final product, render services to production and distribution. Office supplies, packing and shipping supplies, and indirect factory materials are common types. Supplies are acquired, issued, and inventoried in much the same manner as materials. They are consumed by physical units within the normal production cycle and the services they provide constitute an integral part of the bundle of services that make up the finished product.

*Work in Process:*

Work in process includes all materials to which manufacturing services have been applied and upon which further production operations are necessary before the product is ready for sale. The cost of work in progress includes materials, direct labor, and other manufacturing services which can reasonably be traced to the product in its present state of completion.

*Finished Goods:*

Finished goods consist of completed products held for sale, thus they are similar to distributor's merchandise.

Personalty

*Logs and Other Forest Products:*

Personal property in this category includes logs, timber, lumber, shingles, poles, posts, cordwood, pulpwood, bolts, lath, and other forest products.

*Boats and Other Watercraft Not Exempt:*

This category includes watercraft used for other than recreational purposes such as fishing boats, pleasure boats, and cabin cruisers that are rented or held for hire, which are all assessable, as are commercial

fishing boats and boats used by corporations for customer pleasures, unless laid up for repairs.

*Public Utilities (Locally Assessed):*

This category of personal property includes the property and franchise of a public utility company whose property is all within one taxation district.

*Machinery, Tools, and Patterns:*

This category includes machinery, tools, patterns, dies, jigs, equipment, and implements not exempt from taxation. Among others, the list includes the machinery, tools, implements, etc. of:

    Commercial warehouses (i.e., forklifts)
    Contractors
    Heating and air conditioning companies
    Landscapers
    Logging companies
    Plumbers
    Repair or fix-it shops
    Welding shops

*Furniture, Fixtures, and Office Equipment:*

This class contains a wide variety of personal property items such as furniture, fixtures, and office equipment of all kinds not classified as machinery, tools, and patterns. This list includes:

    Adding, calculator machines
    Amusement devices
    Architects' furniture and drafting materials
    Beauty parlor equipment
    Bowling alley equipment
    Broadcasting equipment
    Cash registers
    Check writers
    Cigarette machines
    Data processing equipment
    Dentist chairs and equipment
    Desks and chairs
    Doctors' equipment, including instruments
    Filing cases
    Furniture in motels, hotels, and rooming houses; kitchen equipment such as

dishes, utensils, etc., for use in hotels and motels; and bedding
    Laundromat equipment and furniture
    Office furniture and equipment
    Opticians' furniture and equipment
    Photographers' equipment
    Pool or billiard tables
    Pop machines
    Postage meters
    Restaurant furniture and equipment such as dishes and silverware
    Safes
    Scales
    Store furniture
    Time clocks
    Typewriters

*All Other Personal Property:*

This class includes every item of taxable personal property having a market value and not included in any of the previously enumerated classes. It would include such items as:

    Abstract records
    Buildings on exempt land (if assessed as personal property)
    Buildings on forest crop land
    Buildings on leased land (if assessed as personal property)
    Bulk oil tanks on leased land
    Cheese hoops
    Gas drums
    Hay, grain, silage, and other farm products kept for sale by a farmer
    Law libraries
    Leased equipment not previously classified
    Leasehold improvements (if assessed as personal property)
    Milk cans
    Mink pens
    Mobile homes (if assessed as personal property)
    Private railroads
    Rats and mice (bred and raised for commercial purposes)
    Sign boards

Supplies—including office and profession-
al supplies not kept for sale and not
included in merchants' or manufactur-
ers' stock

Toll bridges

Whey tanks (if not owned by a factory
owner)

The following chart sets forth the aggre-
gate taxes and assessed values of property
subject to taxes in Wisconsin under sub-
chapters I and II of Chapter 76, Wisconsin
Statutes as well as the tax rates for taxes
levied in 1980 payable in 1981 for the
classes listed.

|  | Tax | Assessed Value | Tax Rate |
|---|---|---|---|
| Utilities | 74,203,997 | 3,642,560,920 | .0203714 |
| Railroads | 4,196,439 | 205,996,800 | .0203714 |
| Telephone Co's | 70,619,652 | 2,588,880,775 [3] | .0278153 |

## OPINION

The 4–R Act prohibits levying or collec-
ting "an ad valorem property tax on rail
transportation property at a tax rate that
exceeds the tax rate applicable to commer-
cial and industrial property in the same
jurisdiction." This comparison of the rates
is difficult in states like Wisconsin in which
the jurisdiction that assesses and sets the
tax rate on rail transportation property is
not the "same" as the jurisdictions that
assess and set the tax rate on other kinds of
property. It might appear from Congress'
choice of words that it intended the 4–R
Act not to apply in such states. However,
the legislative history of the act reveals
that Congress was aware of the uncertainty
to which its choice of language gives rise
and consciously imposed upon the courts the
burden of giving effect to the act by deter-
mining the appropriate "assessment juris-
diction" when rail transportation property
is assessed by and the tax rate set by a
state while assessment and rate-setting are
performed by localities as to other kinds of
property. S.Rep. No. 91–630, 91st Cong.,
1st Sess. (1969). I will make this determi-
nation in the present case.

Plaintiffs assert that in Wisconsin,
local units of government are the appropri-
ate "jurisdictions" for the purpose of apply-
ing 4–R's prohibition against discrimination.
They contend that in the course of setting
the tax rate for rail transportation proper-
ty, the state foregoes independent rate-set-
ting and simply adopts the tax rate actually
and previously determined by local units.
The effect, they argue, is as if rate-setting
on rail transportation property is performed
wholly by the local units. I accept this
view.

Although Wisconsin's method of taxing
rail transportation property is somewhat in-
tricate, the theory of plaintiffs' summary
judgment motion is simple. They contend
that if the matter of tax credits is ignored,
rail transportation property is taxed at the
same rate as commercial and industrial
property and that when Wisconsin granted
tax credits evenly, the effective rate re-
mained the same. But since 1981, when the
legislature ended tax credits for rail trans-
portation property while continuing to
grant them for commercial and industrial
property, the effective tax rate on rail
transportation property has exceeded the
effective rate on commercial and industrial
property, in violation of the 4–R Act. The
argument is sound if it is true that in the
absence of any tax credits, rail transporta-
tion is taxed at the same rate as commercial
and industrial property and not at some
lower rate. Close scrutiny of that premise
is required.

The Wisconsin taxing formula embodies
an assumption that rail transportation prop-
erty is geographically scattered throughout
the state in a pattern which coincides with
the pattern in which taxable property in
general is scattered. This is a fiction, in-
dulged in, no doubt, because of the adminis-
trative difficulty and cost involved in deter-
mining from year to year exactly how much
rail transportation property is situated in
this or that local taxing jurisdiction. It is a
fiction which goes unchallenged in this law-

---

**3.** This amount is estimated from net book value
as reported to the Wisconsin Public Service
Commission. Telephone Co's pay a gross re-
ceipts tax.

suit, a fiction embraced by plaintiff rail carriers because it is essential to the theory of their case.

Each local taxing jurisdiction enjoys discretion, within limits not presently relevant, to determine the rate at which it will tax property situated within its borders. For example, the rate may be 50 mills per $1,000 of assessed value in the city of Superior and 70 mills per $1,000 in the city of Milwaukee. After each local jurisdiction has exercised this discretion, it is possible to compute a statewide tax rate on property in general, that is, a composite which reflects the value of the general property situated in this local jurisdiction and that, as well as the varying tax rates imposed by this local jurisdiction and that. The computation is made as follows: the aggregated total of all the general property taxes levied by all the local taxing jurisdictions is divided by the aggregated total of the assessed value of all the general property scattered among all the local taxing jurisdictions.

It is this statewide tax rate on general property which the state then adopts as its own in levying its tax on the assessed value of all the rail transportation property considered to be situated anywhere within the boundaries of the state.

If, as it must, the 4–R Act is to be given effect in a state like Wisconsin, in which rail transportation property is taxed by the state and commercial and industrial property by local jurisdictions, some departure from literalism is necessary. I am persuaded that for the purpose of applying 4–R, it is reasonable to accept the fiction, which the state itself has elected to embody in its formula, that rail transportation property is physically scattered throughout the state in exactly the same pattern in which general property is scattered.

Moreover, as plaintiffs urge, it is reasonable to honor a presumption of regularity upon which plaintiffs' theory also rests. This presumption is that within each local taxing jurisdiction, commercial and industrial property is taxed at the same rate as that imposed upon general property, as the uniformity clause of the Wisconsin Constitution requires. *Gottlieb v. Milwaukee,* 33 Wis.2d 408, 424, 147 N.W.2d 633 (1967). This presumption is also embodied in the formula which the state has chosen to adopt in its taxation of rail transportation property.

Plaintiffs may well prevail in this lawsuit, but the present state of the record does not support summary judgment in their favor. They have made a persuasive case that, absent any tax credits, the tax rate imposed by the state upon rail transportation property is the same as the tax rate imposed by the local jurisdictions, viewed in composite, upon property in general. The difficulty is that 4–R does not prohibit discrimination in rates as between rail transportation property, on the one hand, and property in general, on the other. The 4–R comparison is between the rate on rail transportation property, on the one hand, and commercial and industrial property, on the other. What is missing thus far is the composite local rate which would result from this computation: the aggregated total of all the taxes on commercial and industrial property (and only commercial and industrial property) levied by all the local taxing jurisdictions in the state, divided by the aggregate total of the assessed valuation of all the commercial and industrial property scattered among all the local taxing jurisdictions within the state.[4] Without the result of such a computation, it cannot be ascertained whether, absent any tax credits, the tax rate imposed on rail transportation property is equal to the tax

---

4. Although some commercial and industrial property is levied at the state rather than the local level pursuant to Chapter 76 of the Wisconsin Statutes, the aggregated taxes and assessed values of these properties must also enter the equation. Section 76.07(1) Wis.Stat. directs the state Department of Revenue to ascertain the full market value within the state

of telegraph companies, sleeping car companies, express companies, light, heat, and power companies, air carrier companies, conservation and regulation companies and pipe-line companies in addition to railroad companies. Based on the value of these properties, the department levies a tax at the state average rate of taxation. Wis.Stat. § 76.13(1).

rate imposed on commercial and industrial property. Without such an ascertainment, it cannot be determined whether the effect of omitting rail transportation property from the tax credits apparatus is to depress the effective rate on commercial and industrial property below the effective rate on rail transportation property.

Plaintiffs seem to suggest that this omission is filled by the presumption that the local units have honored the uniformity clause of the Wisconsin Constitution. But the question is not, for example, whether within the city of Superior commercial and industrial property, on the one hand, and other forms of property, on the other, have all been taxed at a rate of 50 mills (or, in the city of Milwaukee, at 70 mills). The problem is that there is no reason to assume (and no fiction is honored) that commercial and industrial property is geographically scattered throughout the state in a pattern which coincides with the pattern in which taxable property in general is scattered. For example, the city of Milwaukee may be the situs of 40% of all of the commercial and industrial property situated in Wisconsin, but it may be the situs of only 30% of all forms of taxable property situated in Wisconsin. Thus, if Milwaukee's tax rate is 70 mills, while Superior and other localities apply a lower rate, the composite state tax rate on commercial and industrial property will exceed the composite state tax rate on general property.

What has been said should be sufficient to explain the order entered below denying plaintiffs' motion for summary judgment. However, further proceedings in the case may be facilitated if I add these observations.

First, throughout this opinion I have used the terms "commercial and industrial property," because they are the terms appearing in the 4–R Act upon which the suit is based.[5] In its statutes, Wisconsin does not use these terms. Wisconsin classifies personal property into a number of categories such as logs and timber, or machinery, tools and patterns, or furniture, fixtures and equipment. Wis.Stat. § 70.30. The state classifies real property into categories such as residential, mercantile, manufacturing, agriculture. Wis.Stat. § 70.32. It will be necessary to decide which of Wisconsin's numerous statutory categories of personal and real property are "commercial" and "industrial" within the meaning of the 4–R Act. Perhaps this is a matter to which the parties can stipulate. If not, I will undertake to give effect to the 4–R Act by matching up 4–R's categories and those of the Wisconsin statutes as best I can.

Second, if plaintiffs are able eventually to prove that the rate applied to rail transportation exceeds that applied to commercial and industrial property, but that the discrepancy is less than 5%, it will be necessary to address an assertion raised by defendant. The defendant claims that the 4–R Act requires that the difference in tax rate be at least 5% before any relief can be granted. I conclude that the 5% threshold is not applicable in tax rate cases. The statute applies the 5% requirement to assessment ratio discrimination cases and not to tax rate discrimination cases. 49 U.S.C. § 11503(c). *Trailer Train Co. v. State Bd. of Equalization,* 511 F.Supp. 553 (N.D.Cal. 1981) identified the purpose for the 5% threshold and held that the purpose was not furthered by applying the test to tax rate cases:

> The minimum percentage rate was included in [§ 11503(c)] because Congress was not concerned with insignificant variations that might develop in state assessment practices. Plainly differences of much less than five percent in rate cases could still result in substantial discrimination against a particular classification of property. *Id.* at 556.

---

5. "Commercial and industrial property" is defined in § 11503(a)(4) of the 4–R Act as "property, other than transportation property and land used primarily for agricultural purposes or timber growing, devoted to a commercial or industrial use and subject to property tax levy."

## ORDER

It is ordered that plaintiffs' motion for summary judgment is denied.