**BURLINGTON NORTHERN RAILROAD CO., Chicago & North Western Transportation Co., Green Bay & Western Railroad Co., Soo Line Railroad Co., and Richard B. Ogilvie, Trustee of the Property of Chicago, Milwaukee, St. Paul & Pacific Railroad Co., Debtor, Plaintiffs,**

v.

**The DEPARTMENT OF REVENUE OF the STATE OF WISCONSIN, Defendant.**

No. 81–C–772.

United States District Court, W.D. Wisconsin.

April 5, 1985.

James E. Bauman, Michael Best & Friedrich, Milwaukee, Wis., for plaintiffs.

John J. Glinski, Asst. Atty. Gen., Bronson C. LaFollette, Atty. Gen., State of Wis., Madison, Wis., for defendant.

## AMENDED OPINION AND ORDER

JAMES E. DOYLE, District Judge.

This civil action for declaratory and injunctive relief is presently before the court on plaintiffs' renewed motion for summary judgment pursuant to Fed.R.Civ.P. 56. Plaintiff contends enforcement of Wisconsin's property tax credit scheme, Chapter 20, Wisconsin Laws of 1981, § 1174, violates the Railroad Revitalization and Regulatory Reform Act of 1976, 49 U.S.C. § 11503 (the 4–R Act).

The factual basis for plaintiffs' initial summary judgment motion was presented in the form of a stipulation which was reprinted in its entirety in this court's opinion denying the motion. 570 F.Supp. 585 (W.D.Wis.1983). Subsequently, the parties have stipulated to additional facts (Docket No. 33). I find there is no genuine issue with respect to the facts appearing in both stipulations. Set forth below are facts derived from the parties' second stipulation.

### FACTS

The following chart sets forth the fair market value of each plaintiff's rail transportation property for the years specified as determined by the Department of Revenue pursuant to Wis.Stats. § 76.07:

|  | 1981 | 1982 | 1983 |
|---|---|---|---|
| Burlington Northern R.R. Co. | 61,157,100 | 66,579,316 | 55,072,629 |
| Chicago & North Western Trans. | 22,699,800 | 23,787,175 | 21,355,299 |
| Green Bay & Western R.R. Co. | 8,717,500 | 8,813,465 | 8,196,521 |
| Soo Line R.R. Co. | 72,111,300 | 70,597,409 | 65,920,180 |
| Chicago, Milwaukee, St. Paul, & Pacific R.R. Co. | 23,820,600 | 29,721,225 | 30,556,747 |

The average rates of taxation as computed by the Department of Revenue pursuant to Wis.Stat. § 76.12 and applied against the fair market value of each plaintiff's rail transportation property as listed above, for the years specified, are as follows:

|  | 1981 | 1982 | 1983 |
|---|---|---|---|
| Average rate of taxation | .0203714 | .0216138 | .0216721 |

The average rate of taxation applied against rail transportation property for each year listed is computed utilizing data for property taxes levied pursuant to Chapter 70 of the Wisconsin Statutes in the preceding year but payable in the same year, e.g. the rate of .0203714 for 1981 was computed utilizing the data for General Property taxes levied in 1980 payable in 1981.

The following charts set forth the fair market value of all property upon which a property tax was levied pursuant to Chapter 70 of the Wisconsin Statutes, the net taxes levied on such property and the effective average tax rate for the property for the years specified. The net taxes listed were computed by the Department of Revenue using a methodology which assumes that when a municipality lies in multiple school or VTAE districts, the class-by-class property distribution within each district is proportional to the class-by-class property distribution in the municipality as a whole. These net tax figures as listed are based on estimates within a reasonable range of accuracy for purposes of this action.

### TAXES LEVIED IN 1980 PAYABLE IN 1981

| | | Net Taxes | Fair Market Value | Effective Tax Rate |
|---|---|---|---|---|
| I. | GENERAL PROPERTY | 1,900,300,754 | 117,465,069,427 | .0161776 |
| A. | Real Property | | | |
| | 1. Residential | 1,126,017,984 | 61,674,712,250 | .0182574 |
| | 2. Mercantile | 311,229,140 | 14,924,562,600 | .0208535 |
| | 3. Manufacturing | 92,068,732 | 4,835,876,500 | .0190387 |
| | 4. Agricultural | 256,832,016 | 17,197,094,700 | .0149346 |
| | 5. Other | 26,170,283 | 2,322,497,950 | .0112682 |
| B. | Personalty | 71,494,466 | 3,675,183,230 | .0194533 |
| | 1. Logs & Other Forest Products | 5,487 | 319,580 | .0171694 |
| | 2. Boats & Other Watercraft (not exempt) | 132,378 | 8,085,370 | .0163725 |
| | 3. Public Utilities (locally assessed) | 31,651 | 1,538,800 | .0205686 |
| | 4. Machinery, Tools, & Patterns | 23,799,962 | 1,242,623,360 | .0191530 |
| | 5. Furniture, Fixtures, & Office Equipment | 35,699,428 | 1,771,432,980 | .0201529 |
| | 6. All Other Personal Property | 11,825,285 | 651,183,140 | .0181597 |
| C. | Personal Property Line A | 16,488,408 | 12,835,142,197 | .0012846 |

### TAXES LEVIED IN 1981 PAYABLE IN 1982

| | | Net Taxes | Fair Market Value | Effective Tax Rate |
|---|---|---|---|---|
| I. | GENERAL PROPERTY | 2,178,933,259 | 112,874,220,070 | .0193040 |
| A. | Real Property | | | |
| | 1. Residential | 1,288,430,485 | 65,550,545,500 | .0196555 |
| | 2. Mercantile | 369,935,488 | 16,630,008,700 | .0222450 |
| | 3. Manufacturing | 108,438,259 | 5,289,456,300 | .0205008 |
| | 4. Agricultural | 293,439,800 | 18,674,742,300 | .0157132 |
| | 5. Other | 31,008,129 | 2,548,027,700 | .0121694 |

| | | | |
|---|---|---|---|
| B. Personalty | 87,681,098 | 4,181,439,570 | .0209690 |
| 1. Logs & Other Forest Products | 11,285 | 541,100 | .0208558 |
| 2. Boats & Other Watercraft (not exempt) | 143,608 | 8,646,940 | .0166080 |
| 3. Public Utilities (locally assessed) | 15,199 | 1,197,300 | .0126944 |
| 4. Machinery, Tools, & Patterns) | 28,764,288 | 1,391,544,630 | .0206708 |
| 5. Furniture, Fixtures & Office Equipment | 44,349,846 | 2,041,988,360 | .0217190 |
| 6. All Other Personal Property | 14,396,872 | 737,521,240 | .0195206 |

### TAXES LEVIED IN 1982 PAYABLE IN 1983

| | Net Taxes | Fair Market Value | Effective Tax Rate |
|---|---|---|---|
| I. GENERAL PROPERTY | 2,206,639,749 | 118,159,120,779 | .0186751 |
| A. Real Property | | | |
| 1. Residential | 1,303,655,960 | 68,132,805,500 | .0191340 |
| 2. Mercantile | 381,602,174 | 17,461,594,300 | .0218538 |
| 3. Manufacturing | 112,846,288 | 5,617,475,300 | .0200884 |
| 4. Agricultural | 281,445,041 | 19,687,669,600 | .0142955 |
| 5. Other | 30,634,227 | 2,692,777,800 | .0113764 |
| B. Personalty | 96,456,058 | 4,566,798,279 | .0211211 |
| 1. Logs & Other Forest Products | 4,459 | 254,700 | .0175057 |
| 2. Boats & Other Watercraft (not exempt) | 136,722 | 9,039,270 | .0151253 |
| 3. Public Utilities (locally assessed) | 20,369 | 1,295,720 | .0157200 |
| 4. Machinery, Tools, & Patterns | 31,195,904 | 1,517,238,756 | .0205609 |
| 5. Furniture, Fixtures & Office Equipment | 49,566,009 | 2,239,642,663 | .0221312 |
| 6. All Other Personal Property | 15,532,595 | 799,327,170 | .0194320 |

The following chart sets forth the fair market value of all property, other than rail transportation property, upon which a property tax was levied pursuant to Chapter 76 of the Wisconsin Statutes, the actual taxes levied on such property and the actual or effective tax rate for that property for the years specified:

|  | Net Taxes | Fair Market Value | Effective Tax Rate |
|---|---|---|---|
| 1981 | 74,203,997 | 3,642,560,920 | .0203714 |
| 1982 | 80,674,779 | 3,732,555,531 | .0216138 |
| 1983 | 86,177,986 | 3,976,175,340 | .0216721 |

For purposes of this action all property listed in the charts above, except the following listed classes of property, is property devoted to commercial or industrial use upon which a property tax is actually levied within the State of Wisconsin, i.e., property other than transportation property and land used primarily for agricultural purposes or timber growing [1]:

(a) Residential Real Property

(b) Agricultural Real Property

(c) Other Real Property

Personal Property Line A in 1981 was taxed at only 30% of fair market value. The assessed portion of that property totalled 3,850,542,659. If that figure were used to compute the value of General Property and the respective average effective tax rate on that property, the value and rate would be as follows:

1981

|  | Net Taxes | Fair Market Value | Effective Tax Rate |
|---|---|---|---|
| General Property | 1,900,300,754 | 108,480,469,889 | .0175174 |

The statewide average effective ad valorem tax rates applied to commercial and industrial property were as follows:[2]

| 1982 | .0216779 |
|---|---|
| 1983 | .0214117 |

The corresponding rate in 1981 depends upon whether the tax on Line A personal property is deemed to have been levied on 100% or 30% of the property's fair market value. The alternative rates are:

| Using 30% of fmv of Line A property | .0182835 |
|---|---|
| Using 100% of fmv of Line A property | .0141678 |

## OPINION

The 4–R Act prohibits levying or collecting "an ad valorem property tax on rail transportation property at a tax rate that exceeds the tax rate applicable to commercial and industrial property in the same assessment jurisdiction." 49 U.S.C. § 11503(b)(3). To determine whether railroads are victims of property tax discrimination in Wisconsin it is necessary to compare the following two figures: (1) the property tax rate applied to railroad transportation property and (2) the property tax rate applied to commercial and industrial property. If the railroad rate exceeds the commercial and industrial rate, the 4–R Act is violated and the railroads are entitled to the relief afforded by the statute.

With one exception, to be addressed shortly, the parties have stipulated to the relevant tax rates in Wisconsin, so that comparison is a relatively straightforward undertaking. There is no question that the state applied the following rates to railroad transportation property:[3]

| 1981 | .0203714 |
|---|---|
| 1982 | .0216138 |
| 1983 | .0216721 |

**1.** In the stipulation, defendant asserted that Line A personal property was not commercial or industrial property. In its brief, however, defendant receded from its contention and agreed the category of commercial and industrial property includes Line A property.

**2.** These rates did not appear in the stipulation, but were revealed in the parties' briefs. It is clear there is no dispute as to their accuracy.

**3.** The state pegs the railroad tax rate to the statewide average rate applied by local jurisdictions to general property, which includes, but is not confined to, commercial and industrial property. For the purposes of determining

The property tax rate applied in Wisconsin to commercial and industrial property, to which the railroad rate must be compared, is more difficult to ascertain because "commercial and industrial property" is not a category used by defendant. I rejected plaintiffs' original motion for summary judgment because they had failed to establish the effective rate of taxation applied to commercial and industrial property during the relevant years. I held that this rate would be found by computing "the aggregated total of all the taxes on commercial and industrial property (and only commercial and industrial property) levied by all the local taxing jurisdictions in the state, divided by the aggregate total of the assessed valuation of all the commercial and industrial property scattered among all the local taxing jurisdictions within the state." 570 F.Supp. at 594. I expressed my hope the parties could stipulate to the facts essential to this calculation, and indeed they have. Both sides agree dividing the total tax paid on commercial and industrial property in Wisconsin by the total assessed value of such property yields the following effective tax rates:[4]

| 1982 | .0216779 |
| 1983 | .0214117 |

The parties disagree over the effective commercial and industrial property rate for 1981. The disagreement stems from the fact that in that year the state appears to have assessed a certain component category of commercial and industrial property, namely "Line A Personal Property," at only 30% of its actual fair market value. This contrasts with the assessment at 100% of fair market value of all other commercial and industrial property, as well as of railroad transportation property. Whether

30% or 100% of the fair market value of Line A Property is used in calculating the aggregate value of commercial and industrial property makes a substantial difference in the average tax rate. Line A property comprises approximately one-third of all commercial and industrial property.

The 4–R Act prohibits assessing "rail transportation property at a value that has a higher ratio to the true market value of the rail transportation property than the ratio that the assessed value of other commercial and industrial property in the same assessment jurisdiction has to the true market value of the other commercial and industrial property." 49 U.S.C. § 11503(b)(1). Plaintiffs contend assessing their rail property at 100% of fair market value is discriminatory. I agree.

The statute does not explicitly address a situation, such as here, in which some but not all commercial and industrial property is underassessed relative to rail transportation property. However, it is clear that assessment of a significant portion of commercial and industrial property at a value that has a low ratio to its true market value lowers the aggregate assessment ratio for the category of commercial and industrial property, taken as a whole. In this case, assessing Line A property at 30% of fair market value serves to lower the aggregate assessment of all commercial and industrial property to about 80% of fair market value. Rail transportation property, however, is assessed at 100% of fair market value, and is thus discriminated against by means of the assessment ratios used. When the aggregate total of the assessed valuation of all commercial and industrial property is calculated, as it should be for purposes of applying the 4–R Act, based on 100% of the fair market value of Line A property, the effective tax rate on the entire category of commercial

---

whether discrimination exists under 4–R, however, it is irrelevant how Wisconsin arrives at its railroad tax rate.

**4.** As note in the prior opinion, the effective tax rate applied to commercial and industrial property reflects tax credits granted by the state to commercial and industrial property owners (but not to owners of railroad transportation property).

and industrial property for 1981 is .0141678. I find, therefore, that .0141678 is the effective rate for 1981.

■ Having established the tax rates for rail transportation property and commer-

cial and industrial property, it is necessary only to compare the rates to determine the excess tax, if any, charged against rail transportation property:

|  | Rail Transportation Tax Rate | Commercial/ Industrial Tax Rate | Difference |
|---|---|---|---|
| 1981 | .0203714 | .0141678 | .0062036 |
| 1982 | .0216138 | .0216779 | −.0000641 |
| 1983 | .0216721 | .0214117 | .0002604 |

In 1981 and 1983, there was levied "an ad valorem property tax on rail transportation property that exceed[ed] the tax rate applicable to commercial and industrial property," in violation of the 4–R Act. In 1982, there was not.

Plaintiffs argue the discrepancy between the tax rate on rail transportation property was actually greater than that shown in the calculations above. Their argument runs as follows: To test whether, and how much, discrimination has occurred, in 1981, for example,[5] we must assume that rail transportation property had not been rail transportation property but, rather, had been a sub-category of commercial and industrial property ("railroad-type") within the general category of commercial and industrial property, and then inquire, how would it have fared? The answer to that question depends critically on where this railroad-type commercial and industrial property was situated geographically, since each local jurisdiction sets its own tax rate. No one knows how this railroad-type commercial and industrial property was situated geographically, and there is no practical way to ascertain this fact from year to year. If the 4–R Act is to be given effect in this context, and it must be, it is necessary to indulge in a fiction concerning how railroad-type commercial and industrial

property was scattered geographically. The alternative fictions are probably infinite. However, for the purpose of deciding what tax rate to apply to rail transportation property, the state actually did make a choice among the possible geographical fictions. It chose the fiction that the configuration of the geographical scattering of railroad-type commercial and industrial property ("railroad-type geography") was precisely congruent with the configuration of the geographical scattering of general property ("general property geography"). When that fiction was indulged for 1981, the statewide average tax rate for "railroad-type" commercial and industrial property was in fact identical to the statewide average tax rate for general property,[6] with one major exception. For railroad-type commercial and industrial property, the tax credit was not granted. The discrimination inheres in, and is to be measured by, this discrepancy.

This is a persuasive thesis. The effect of my earlier opinion in this case was implicitly to reject it, although I did not then perceive clearly the implications of plaintiffs' thesis or of mine. I now believe that the contrast between my earlier opinion and plaintiffs' thesis lies in the contrast between the geographical fiction plaintiffs urge on the court (congruence of railroad-

**5.** It is also a question of how much will occur in the future, of course, if the state's procedure remains unchanged. Analysis is facilitated, however, by referring to past years, as to which concrete data can be examined.

**6.** Pursuant to the uniformity clause of the state constitution, within each local taxing jurisdiction there is but a single tax rate for all types of property. *See* 570 F.Supp. at 594.

type geography with general property geography) and another geographical fiction (congruence of railroad-type geography with non-railroad-type commercial and industrial property geography). In the earlier opinion, I implicitly asserted that for the purpose of applying the 4–R Act, the fiction to be applied was the fiction of congruence between railroad-type geography with non-railroad type commercial and industrial property geography. I made this implicit assertion in an opinion in which I was also saying that I accepted the fiction of congruence urged by plaintiffs (between railroad-type geography and general property geography).

After an effort freshly to analyze the issue, and for reasons set forth below, I conclude that one fiction may well be entirely serviceable to the state of Wisconsin for its purpose, while another, seemingly inconsistent fiction is better suited to the congressional purpose in enacting 4–R and to the court's role in giving effect to the congressional purpose, rather than to some purpose of the state.

The geographical fiction urged by plaintiffs has been dignified by being chosen by the state for the purpose of deciding the tax rate it applies to railroad transportation property, and it has been acquiesced in by the railroads, apparently because it is a practical and sufficiently fair device to cope with the difficulty in determining the geographical situs of various items of railroad transportation property, from year to year. As I have remarked in note 1, however, so far as purpose and language of the 4–R Act are concerned, it is irrelevant how Wisconsin has arrived at the tax rate it imposes on railroad transportation property. The state may elect any objective it deems desirable, including parity or disparity between the tax rate on railroad transportation property and the tax rate on general property, and it can elect any means to that objective, including indulging a fiction that the railroad property is geographically scattered in this pattern or that. But Congress has forbidden the result to be a tax rate on railroad transportation property higher than that on a defined category of property, specifically, commercial and industrial property.

When a court in Wisconsin is called upon by the 4–R Act to compare the rate on railroad transportation property with the rate on commercial and industrial property, it encounters the same practical difficulty that the state encountered in deciding upon a rate to apply to railroad transportation property: the absence of information about where the property is located. But the court's response to that practical difficulty must be shaped by the court's function to fulfill the congressional purpose in enacting 4–R, not some irrelevant state purpose. That function is to make a comparison between how the state has taxed one specific category of property and how it has taxed another specific category of property. This function differs from the function which the state performed. To perform its function, the court must employ the geographical fiction most serviceable in achieving an accurate and fair comparison for purposes of the 4–R Act.

I accept plaintiffs' suggestion that the mode of testing for discrimination is to inquire how, in a given tax year, railroad transportation property would have fared had the state treated it as a sub-category of property within the larger category of all commercial and industrial property.

But it is more consistent to follow through with an assumption that the sub-category was geographically scattered consistently with the larger category. I acknowledge that this assumption, this geographical fiction, is unsupported in the record of this case, as is the geographical fiction urged by plaintiffs. Although I do not consider it necessary to a decision that the fiction be rooted in fact, it is comforting that it does not appear unreasonable to hypothesize some correlation between the location of commercial and industrial facilities and the location of rail facilities.

■ I hold that the rate comparison is most reasonably and fairly made on the assumption, year by year, that the configuration in which railroad transportation property is scattered is congruent with the configuration in which commercial and industrial property is scattered, and that the presence and the extent of discrimination in rates is as it appears in the table on page 1578 of this opinion.

I depart from my earlier determination that local jurisdictions are the appropriate assessment jurisdictions for purposes of 4–R. Plaintiffs have never claimed the search for discrimination against rail transportation property should focus separately on each local jurisdiction. On the contrary, plaintiffs have been content if rail transportation property is taxed by the state at no more than an average of varying rates applied by a composite of local taxing jurisdictions. Rail transportation property actually may be distributed in a way more favorable to railroads (i.e., concentrated in low-tax jurisdictions) or more favorable to the state (i.e., concentrated in high-tax jurisdictions). However, both defendant and plaintiffs have been willing to accept a tax rate tied to an average arising from varying local rates.

■ Notwithstanding language to the contrary in the earlier opinion, local jurisdictions have not been treated in actuality as assessment jurisdictions under the 4–R Act; parties have not sought examination of the comparative rate situation in individual local jurisdictions. Given the statewide perspective on taxing rail transportation property adhered to by all parties, I now hold that in applying 4–R the state is the appropriate assessment jurisdiction. *See Atchison, Topeka and Santa Fe Ry. Co. v. Lennen,* 552 F.Supp. 1031, 1035 n. 7 (D.Kan.1982).

The state argues it is shielded from liability by *de minimis.* I hold otherwise.

The statute has no express substantiality requirement as to discriminatory rates, as contrasted with discriminatory assessments; I infer none. That the calculations are based on estimates does not militate in the state's favor, for just as the estimated excess may overstate the real disparity, it might just as easily understate it.

## ORDER

Plaintiffs' renewed motion for summary judgment is granted. I declare the tax rates applied to plaintiff's rail transportation property by defendant in 1981 and 1983 were discriminatory, in violation of 49 U.S.C. § 11503(b)(3). Defendant is enjoined from applying to rail transportation property a tax rate in excess of the average effective ad valorem rate on commercial and industrial property in Wisconsin. For the years 1981 and 1983, defendant is enjoined from taxing rail transportation property at a rate in excess of .0141678 and .0214117, respectively.

No later than April 15, 1985, counsel for plaintiffs is directed to serve and file a proposed form of judgment, consistent with this opinion, for the court's approval and for entry by the clerk of court. Within seven days of service of such a proposed judgment, counsel for defendant may serve and file objections to the proposed form of judgment. The court will rule on any such objections and direct entry of judgment by the clerk.