STATE BOARD OF EQUALIZATION OF THE STATE OF COLORADO; Don Eberle, Carl B. Bledsoe, Ted L. Strickland, Kenneth Smith, and C. Michael Callihan, in their official capacity as members of the State Board of Equalization of the State of Colorado; Board of Assessment Appeals of the State of Colorado; Henry F. Shriver and F. William Beier, in their official capacity as members of the Board of Assessment Appeals of the State of Colorado; Board of Equalization of the City and County of Denver Sitting as a Board of County Commissioners; John Mrozek, Wes Martin, Thomas P. Briggs, Felicia Muftic, and Ted Hackworth, in their official capacity as members of the Board of Equalization of the City and County of Denver; Department of Revenue of the City and County of Denver; Thomas P. Briggs, in his official capacity as Manager of the Department of Revenue of the City and County of Denver; and Mary Anne Maurer, in her official capacity as the Property Tax Administrator of the State of Colorado, Petitioners,

v.

AMERICAN AIRLINES, INC.; Continental Airlines, Inc.; Delta Airlines, Inc.; Eastern Airlines, Inc.; Frontier Airlines, Inc.; Ozark Airlines, Inc.; Republic Airlines, Inc.; Texas International Airlines, Inc.; Trans World Airlines, Inc.; United Airlines, Inc.; and Western Airlines, Inc., Respondents.

No. 87SC430.

Supreme Court of Colorado,
En Banc.

April 24, 1989.

Stephen H. Kaplan, City Atty. Robert F. Strenski, Asst. City Atty., Denver, for petitioners.

Holland & Hart, William E. Murane, Alan Poe, John R. Maxfield, Denver, for respondents.

Semple & Jackson, P.C., Michael H. Jackson, Dwight L. Pringle, Denver, for amicus curiae School Dist. No. 1.

QUINN, Chief Justice.

The question in this case is whether section 532(b) of the Tax Equity and Fiscal

Responsibility Act of 1982,[1] codified at 49 U.S.C.App. § 1513(d) (1982), which was signed into law on September 3, 1982, and prohibits state taxing authorities from taxing air carrier transportation property differently from other commercial and industrial property in the same assessment jurisdiction, is applicable to the 1982 Colorado property taxes assessed on the property of eleven airline companies and levied and collected by Colorado taxing authorities. In *American Airlines, Inc. v. State Board of Equalization,* 749 P.2d 986 (Colo.App. 1988), the court of appeals held that 49 U.S.C.App. § 1513(d) applied to the 1982 Colorado property taxes because the taxes were based on disparate assessment values and the actual collection of the taxes occurred subsequent to the effective date of the federal legislation. We reach a contrary result. We construe 49 U.S.C.App. § 1513(d) as applying only to the levy and collection of taxes based on assessments made on or after September 3, 1982, the effective date of the federal legislation. Since the assessments in this case were completed prior to the effective date of the federal statute and were made in accordance with then existing Colorado law, the provisions of 49 U.S.C.App. § 1513(d) did not prohibit Colorado taxing authorities from levying and collecting the taxes so assessed. We accordingly reverse the judgment of the court of appeals.

## I.

The petitioners are the State Board of Assessment Appeals, the State Board of Equalization, the Denver Board of Equalization, the Denver Department of Revenue, the individual members of those taxing entities, the state Property Tax Administra-

tor, and the Manager of the Denver Department of Revenue. The respondents are the following eleven corporate airline companies, each of which is subject to the payment of 1982 Colorado property taxes: American Airlines; Continental Airlines; Delta Airlines; Eastern Airlines, Frontier Airlines; Ozark Airlines; Republic Airlines; Texas International Airlines; Trans World Airlines; United Airlines; and Western Airlines. Before outlining the facts, we summarize the statutory framework out of which this case arises.

## A.

By statute, the official assessment date for all taxable property in the state, both real and personal, is twelve noon on the first day of January of each year. § 39–1–105, 16B C.R.S. (1982 & 1988 Supp.). Property located within the state at that time and date must be appraised and valued for assessment in the county wherein it is located on the assessment date. *Id.*

In 1982 the Colorado property tax statutes distinguished certain types of property for purposes of valuation. This was accomplished by applying different base-year levels of value to some properties, including the property of public utilities. The term "public utility" included every company doing business in this state as an airline company. § 39–4–101(2.5), 16B C.R.S. (1982). In determining the value of a public utility for purposes of 1982 property taxes, the public utility's actual 1982 value was adjusted by the state Property Tax Administrator (hereinafter referred to as administrator) to its level of value in 1981, § 39–4–102(3)(a), 16B C.R.S. (1982),[2] while

---

1. The Tax Equity and Fiscal Responsibility Act is a comprehensive bill which includes Title V, the Airport and Airway Improvement Act of 1982, of which section 532(b) is a part. Pub.L. No. 97–248, 96 Stat. 324, 701 (1982).

2. Section 39–4–102(1), 16B C.R.S. (1982), authorized the administrator to determine the actual value of public utility property, such as the property of an airline company, by considering the following factors and assigning such weight to them as will secure a just value of the public utility as a unit:

(a) The tangible property comprising its plant, whether the same is situated within this state or both within and without this state, exclusive of any tangible property situated without this state which is not directly connected with the business in which such public utility is engaged within this state;

(b) Its intangibles, such as special privileges, franchises, contract rights and obligations, and rights-of-way;

(c) Its gross and net operating revenues during a reasonable period of time not to

other commercial and industrial property, not subject to specific statutory valuation, was adjusted to its 1973 level of value pursuant to section 39–1–104(9)(a), 16B C.R.S. (1982). Although airline property was valued at a more current level of value than the value applicable to other commercial and industrial property, the statutory valuation rate applicable to both types of property was the same. Once the levels of value were adjusted to their respective base years, the valuations for assessment for both airline and other commercial and industrial properties were determined by multiplying the adjusted levels of value by 30%. Section 39–1–104(1), 16B C.R.S. (1982), in this respect, provided as follows:

> Except when otherwise prescribed in articles 1 to 13 of this title, the valuation for assessment of all taxable property in the state shall be thirty percent of the actual value thereof as determined by the assessor and the administrator in the manner prescribed by law, and such percentage shall be uniformly applied, without exception, to the actual value, so determined, of the various classes and subclasses of real and personal property located within the territorial limits of the authority levying a property tax. . . .

Colorado's statutory scheme requires the state tax administrator, not later than the first day of June in each year, to advise both the county assessor and the public utility of the amount of valuation for assessment of public utility property in the county. § 39–4–107, 16B C.R.S. (1982). The amount of valuation is then entered on the tax roll of the county by the county assessor. *Id.* Not later than July 1 of the same year, a public utility may file a petition with the administrator objecting to the valuation on the basis that the actual value of its property and plant as determined by

the administrator is illegal, erroneous, or not uniform with the actual value of like property similarly situated. § 39–4–108(1), 16B C.R.S. (1982). The administrator is required to hear evidence on the petition and to render a decision in writing not later than the first day of August. § 39–4–108(4) & (5), 16B C.R.S. (1982). If the petition is granted, the administrator must make appropriate corrections or changes in the valuation for assessment of the public utility property, or in the apportionment thereof, and is required to certify the corrections or changes to the respective county assessor. § 39–4–108(6), 16B C.R. S. (1982). If, on the other hand, the administrator denies the petition, the party adversely affected by the administrator's decision may appeal to the State Board of Assessment Appeals not later than thirty days after the administrator's decision. §§ 39–4–108(8) and 39–2–125(1)(b)(I), 16B C.R.S. (1982). The decision of the Board of Assessment Appeals is subject to judicial review in the District Court of the City and County of Denver. § 39–4–109(2); 16B C.R.S. (1982).[3]

Not later than August 10 of each year, the county assessor is required to prepare an abstract of assessment listing the value of all taxable property located within the county. § 39–5–123(1), 16B C.R.S. (1982). The administrator must review the abstract of assessment, and if any of the various classes or subclasses of real and personal property located within the county have not been valued as required by law, the administrator is required to determine the amount of increase or decrease in valuation necessary to conform to the requirements of law and to file a complaint with the State Board of Equalization specifying the amount recommended to be added to or deducted from the valuation for the follow-

exceed the most recent five-year period, capitalized at indicative rates;

(d) The average market value of its outstanding securities during the preceding calendar year, if such market value is determinable.

**3.** In the case of a petition for judicial review by a public utility, the utility is required to pay the full amount of all taxes levied upon the valuation for assessment prior to filing the petition

for judicial review. § 39–4–109(2), 16B C.R.S. (1982). If the petition for judicial review is sustained, then, upon presentation to the county treasurer of a certified copy of the order modifying the assessment valuation, the treasurer must forthwith make the appropriate refund of taxes, together with interest at the rate of 6% per annum from the date of payment. § 39–4–109(3), 16B C.R.S. (1982).

ing taxable year. § 39–2–115(2), 16B C.R. S. (1982). If the administrator determines that various classes or subclasses of real and personal property have been properly valued for assessment purposes, the administrator must transmit the abstracts of assessment to the State Board of Equalization not later than the second Monday in September of each year. § 39–2–115(3), 16B C.R.S. (1982). Not later than the fourth Monday in September of each year, the State Board of Equalization is required to complete its review of the abstracts of assessment of the several counties, and the state auditor must thereupon certify to the assessor of each county a statement of any changes ordered by the board for the current taxable year, as well as for the next succeeding taxable year, and also to return the abstracts of assessment for the current taxable year to each county. § 39–9–105(1), 16B C.R.S. (1982).

The Colorado taxing authorities were following the above statutory scheme for 1982 property taxes when 49 U.S.C.App. § 1513(d) was enacted into law as part of the Tax Equity and Fiscal Responsibility Act of 1982. The federal law became effective on September 3, 1982, when it was signed by President Reagan. *See* Pub. L.No. 97–248, § 523, 96 Stat. 671, 695 (1982); Acts Approved by the President, 1982 *Public Papers of the Presidents of the United States* 1699, 1700 (Appendix D). 49 U.S.C.App. § 1513(d)(1) provides as follows:

(1) The following acts unreasonably burden and discriminate against interstate commerce and a State, subdivision of a State, or authority acting for a State or subdivision of a State may not do any of them:

(A) assess air carrier transportation property at a value that has a higher ratio to the true market value of the air carrier transportation property than the ratio that the assessed value of other commercial and industrial property of the same type in the same assessment jurisdiction has to the true market value of the other commercial and industrial property;

(B) levy or collect a tax on an assessment that may not be made under subparagraph (A) of this paragraph; or

(C) levy or collect an ad valorem property tax on air carrier transportation property at a tax rate that exceeds a tax rate applicable to commercial and industrial property in the same assessment jurisdiction.

49 U.S.C.App. § 1513(d)(2) defines the following terms used in subsection (1):

(A) "assessment" means valuation for a property tax levied by a taxing district;

(B) "assessment jurisdiction" means a geographical area in a State used in determining the assessed value of property for ad valorem taxation;

(C) "air carrier transportation property" means property, as defined by the Civil Aeronautics Board, owned or used by an air carrier providing air transportation;

(D) "commercial and industrial property" means property, other than transportation property and land used primarily for agricultural purposes or timber growing, devoted to a commercial or industrial use and subject to a property tax levy.

### B.

There is no dispute as to the essential facts of this case. The administrator determined the 1982 value of each airline company's operating property and plant as of January 1, 1982, adjusted the 1982 value to its level of value in 1981 by applying an equalization factor of 93%, then multiplied the adjusted level of value by 30%—the uniform percentage for determining the valuation of all property in the state—and apportioned the assessed value among the counties in proportion to the airlines' properties located in each county. *See* §§ 39–1–104(1), 39–4–102, and 39–4–106, 16B C.R.S. (1982). This procedure resulted in a 27.9% ratio of assessed valuation to market value for airline property with respect to 1982 property taxes, while if 49 U.S.C.App. § 1513(d) had been applied to the 1982 tax

year the assessment ratio for airline property would have been 14%.[4]

On May 26, 1982, the administrator notified the airlines and the county assessors of the assessed valuation attributable to each airline. § 39–4–107, 16B C.R.S. (1982). Five of the airlines (Continental, Frontier, Texas International, Trans World, and United) objected to the 1982 valuations, while the other airlines did not. The five objecting airlines filed petitions with the administrator on or before July 1, 1982. § 39–4–108(1), 16B C.R.S. (1982). A hearing was held before the administrator, who thereafter issued notices of adjusted valuation on July 30, 1982. § 39–4–108(5), 16B C.R.S. (1982). None of the five airlines or the counties appealed the administrator's adjusted valuations to the Board of Assessment Appeals. *See* § 39–4–108(8), 16B C.R.S. (1982).

Upon receiving the notices of valuation and adjusted valuation for the airlines, the county assessors entered the amounts of valuation on the county tax rolls, § 39–4–107, 16B C.R.S. (1982), and after review by their respective County Boards of Equalization, § 39–8–102(1), 16B C.R.S. (1982), the county assessors prepared abstracts of assessment listing the value of all taxable property located in their counties and filed the abstracts with the administrator prior to August 10, 1982. *See* §§ 39–2–115(1) and 39–5–123(2), 16B C.R.S. (1982). The administrator examined the abstracts prepared by the county assessors, §§ 39–2–115(2) and 39–5–124(2), 16B C.R.S. (1982), and the State Board of Equalization then reviewed the valuations for assessment upon the various classes and subclasses of property in each county pursuant to section 39–9–103(1), 16B C.R.S. (1982). On September 21, 1982, the State Board of Equalization approved the abstracts of assessment for 1982 prepared by the respective county assessors. *See* § 39–9–105, 16B C.R.S. (1982).

The City and County of Denver, where a large portion of the airlines' properties was situated, determined the airlines' tax liabilities by multiplying a uniform tax rate mill levy of 89.261 mills to the valuations for assessment, and informed the airlines that their 1982 tax liabilities to Denver County were due by April 30, 1983, or could be paid in two installments in February and July of 1983. *See* § 39–10–104(1)(a), 16B C.R.S. (1982). All eleven airline companies made their installment payments on the amounts due to Denver County in February and July of 1983.

On July 25, 1983, almost eleven months after the enactment of 49 U.S.C.App. § 1513(d), the eleven airline companies filed petitions with the Denver Board of Equalization, sitting as a board of county commissioners, for abatement or refund of their 1982 property taxes paid to Denver County on the basis that the federal statute prohibited Denver County from assessing 1982 property taxes against airline property at a higher assessment ratio than that applied to other commercial and industrial property in the same assessment jurisdiction, and from levying and collecting the taxes so assessed. The Denver Board of Equalization denied the airlines' petitions for abatement or refund on November 21, 1983, and the airlines appealed to the State Board of Assessment Appeals.

The various appeals were consolidated for hearing before the State Board of Assessment Appeals, which then consisted of only two members, rather than three, because a vacancy on the board had not yet been filled by appointment of the Governor. *See* § 39–2–123(2), 16B C.R.S. (1982). One member voted to deny the airlines' re-

---

4. In the airlines' subsequent appeals to the Board of Assessment Appeals, the administrator testified that she determined the 1982 assessed value of airline property by first multiplying the 1982 value by the equalization factor of 93% and thereby obtained its 1981 value, and then by multiplying the 1981 value by 30% in order to obtain the valuation for assessment. The result was an assessment ratio of 27.9% for airline property. The administrator also testified that

if 49 U.S.C.App. § 1513(d) applied to the 1982 tax year, the assessment ratio for airline property would be 14%. The 14% figure was reached by multiplying 48%—the percentage necessary to reduce the 1982 value of commercial and industrial property to the 1973 level—by 30%, which was the percentage used for the valuation for assessment of all taxable property in the state pursuant to section 39–1–104(1), 16B C.R.S. (1982).

quests for a refund, reasoning that 49 U.S.C.App. § 1513(d) did not become effective until September 3, 1982, and was thus not retroactively applicable to taxes assessed prior to the effective date of the statute. The other board member voted to grant a refund because as of September 3, 1982, the effective date of 49 U.S.C.App. § 1513(d), the process of determining actual value, including the equalization phase of the taxing scheme, had not yet been completed. Because the two-member board did not reach a majority decision, the appeals of the airline companies were denied. *See* § 39–2–127(2), 16B C.R.S. (1982).

The airline companies filed petitions for judicial review in the Denver District Court.[5] After consolidating all the petitions into one proceeding, the district court ruled that 49 U.S.C.App. § 1513(d) did not apply to the 1982 tax liabilities of the airlines because the valuations for those taxes were made prior to the effective date of the federal statute and were in accordance with the then existing Colorado law. The airlines appealed to the court of appeals, which reversed the judgment of the district court, concluding that 49 U.S.C.App. § 1513(d)(1) was applicable to the 1982 property taxes assessed against the airlines and that the federal statute was violated because the 1982 disparate market values for airline property, on the one hand, and for other commercial and industrial property, on the other, "resulted in a significantly higher tax burden on the airlines." *American Airlines, Inc.*, 749 P.2d at 989. We thereafter granted the taxing authorities' petition for certiorari in order to consider whether 49 U.S.C.App. § 1513(d) is applica-

ble to the 1982 property taxes assessed against and paid by the airline companies.[6]

## II.

At the outset of our analysis, it will be helpful to state briefly what this case is not about and then outline the operative principles applicable to our resolution of the issue before us.

## A.

The taxing authorities and the airlines do not dispute the proposition that Colorado's 1982 property tax scheme set the valuation of air carrier transportation property at a 1981 value, rather than the 1973 value applicable to other commercial and industrial property, and to that extent assessed air carrier transportation property at a value that had a higher ratio to the true market value of air carrier transportation property than the ratio applicable to other commercial and industrial property. Nor is it disputed that 49 U.S.C.App. § 1513(d) is binding on the State of Colorado under the Supremacy Clause, U.S. Const. art. VI, for tax years subsequent to the effective date of the federal statute. Nor, finally, is any claim made that the refusal of the taxing authorities to apply 49 U.S.C.App. § 1513(d) to the 1982 tax year denied the airline companies due process or equal protection of the laws. Rather, the dispute in this case centers on whether the airlines are entitled to a refund of their 1982 property taxes by reason of the applicability of 49 U.S.C.App. § 1513(d) to taxes assessed prior to the effective date of the statute but levied and collected subsequent to the date of the statutory enactment.[7] Resolu-

---

5. Simultaneously with their filing of appeals in the district court, the airlines filed petitions with the State Board of Equalization, requesting the board to determine whether it had jurisdiction over the airlines' challenges to the assessments. The Board of Equalization ruled that it would not accept jurisdiction over the airlines' challenges.

6. We also granted the taxing authorities' petition to consider whether the application of 49 U.S.C.App. § 1513(d) to the 1982 taxes assessed against the airline companies would amount to an unconstitutional usurpation of state sover-

eignty in violation of the Tenth Amendment to the United States Constitution. Because we find that § 1513(d) does not apply to the 1982 property taxes assessed against the airline companies, we need not and do not address the constitutional claim raised by the taxing authorities.

7. By stipulation, the parties have agreed that if 49 U.S.C.App. § 1513(d) is applicable to the 1982 property taxes assessed against the airline companies, the companies would be entitled collectively to a refund of approximately $3,200,000.00. The parties have also stipulated that, although section 39–10–114(1)(a), 16B C.R.

tion of that question involves a matter of statutory construction.

### B.

 It has been stated that "the first rule of construction is that legislation must be considered as addressed to the future, and not to the past." *Union Pacific Railroad Co. v. Laramie Stock Yards Co.*, 231 U.S. 190, 199, 34 S.Ct. 101, 102, 58 L.Ed. 179 (1913). This rule of presumptive prospective application "prevents the assigning of a quality or effect to acts or conduct which they did not have or did not contemplate when they were performed." *Id.* While a remedial statute that does not affect preexisting rights or obligations may be applied retroactively in accordance with its salutary purpose, *see generally* N. Singer, 2 *Sutherland Statutory Construction* § 41.04 (4th ed.1986), a statute that changes the status of claims fixed in accordance with earlier law should not be applied retroactively unless the legislative purpose to do so unmistakably appears in the statute itself. *See, e.g., Claridge Apartments Co. v. Commissioner of Internal Revenue*, 323 U.S. 141, 65 S.Ct. 172, 89 L.Ed. 139 (1944) (retroactivity, even where permissible, is not favored except upon clearest legislative mandate); *Hassett v. Welch*, 303 U.S. 303, 58 S.Ct. 559, 82 L.Ed. 858 (1938) (recognizing and applying well settled rule of statutory construction that a law is presumed to operate prospectively in absence of clear expression to the contrary); *United States v. Magnolia Petroleum Co.*, 276 U.S. 160, 48 S.Ct. 236, 72 L.Ed. 509 (1928) (section 1019 of Revenue Act of 1924, which provided for refund of taxes erroneously or illegally assessed or collected, was not to be construed retroactively with respect to refunds allowed under earlier revenue act but not yet computed or paid when 1924 statute was enacted). This general prohibition against retroactive application is but a recognition of the fact that it is the normal and usual function of

legislation to discriminate between past and future transactions. *Claridge Apartments Co.*, 323 U.S. at 164, 65 S.Ct. at 185.

The starting point in statutory interpretation is the statutory language itself. *E.g., United States v. Turkette*, 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981); *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568, 99 S.Ct. 2479, 2485, 61 L.Ed.2d 82 (1979). Where the statutory language is clear and certain, the statute should be construed as written, since the function of the court in such a case is to enforce the statute according to its terms. *E.g., Turkette*, 452 U.S. at 580, 101 S.Ct. at 2527; *Caminetti v. United States*, 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917). Where, however, the statutory language is unclear, resort to legislative history is appropriate in order to arrive at an interpretation that effectuates legislative intent. *E.g., Blum v. Stenson*, 465 U.S. 886, 896, 104 S.Ct. 1541, 1547, 79 L.Ed. 2d 891 (1984); *United States v. An Article of Drug*, 394 U.S. 784, 799, 89 S.Ct. 1410, 1418, 22 L.Ed.2d 726 (1969); *United States v. Public Utilities Commission of California*, 345 U.S. 295, 315, 73 S.Ct. 706, 717, 97 L.Ed. 1020 (1953). Moreover, wherever practicable, a statute should be interpreted in a manner that gives effect to all its provisions, and not in a way that renders one or more of its parts inoperative. *E.g., Mountain States Telephone and Telegraph Co. v. Pueblo of Santa Ana*, 472 U.S. 237, 249, 105 S.Ct. 2587, 2594, 86 L.Ed.2d 168 (1985); *Weinberger v. Hynson, Westcott and Dunning, Inc.*, 412 U.S. 609, 633, 93 S.Ct. 2469, 2485, 37 L.Ed.2d 207 (1973); *United States v. Menasche*, 348 U.S. 528, 538–39, 75 S.Ct. 513, 519–20, 99 L.Ed. 615 (1955).

It is with these considerations in mind that we turn to the appropriate construction of 49 U.S.C.App. § 1513(d).

### III.

The taxing authorities argue that 49 U.S. C.App. § 1513(d)(1) does not apply to the

---

S. (1982), provides that no abatement or refund of taxes shall be made more than six years after the taxes were due, the failure of the parties to complete the available statutory processes to finally resolve this litigation within the six year

period will not bar or otherwise prohibit the refund of 1982 property taxes overpaid by the airlines, plus interest as provided by law, in the event ultimate resolution of the case is in favor of the airlines.

1982 tax year because as of the statute's effective date of September 3, 1982, the assessments for the 1982 property taxes were completed and the federal legislation was not intended to apply to 1982 taxes which were assessed prior to September 3, 1982, but not yet levied or collected until after the statutory enactment became effective. The airline companies, on the other hand, argue that 49 U.S.C.App. § 1513(d)(1) protected them against the levy and collection of the 1982 taxes because as of September 3, 1982, the process of fixing the 1982 Colorado property tax assessments had not yet been completed.

Determining the applicability of 49 U.S. C.App. § 1513(d)(1) to the 1982 property taxes assessed against the airlines, and later levied and collected by the taxing authorities, requires that we address the preliminary question of whether the assessments for 1982 were completed before September 3, 1982, the effective date of the federal statute. We therefore consider that question first and then take up the applicability of subparagraphs (A), (B), and (C) of § 1513(d)(1) to the factual circumstances of this case.

### A.

The "valuation for assessment" was initially determined in this case when the administrator ascertained the actual value of the property of the eleven airline companies, applied the equalization factor to the actual value, multiplied by 30%, *see* § 39–1–104(1), 16B C.R.S. (1982), and then, pursuant to section 39–4–107, 16B C.R.S. (1982), notified the counties and the airline companies on May 26, 1982, of the valuation for assessment that had been apportioned to each county. Because the airline companies had the right to challenge the valuations as illegal, erroneous, or not uniform with the actual value of like property similarly situated and to petition the administrator for a correction or change, § 39–4–108(1), 16B C.R.S. (1982), and because the administrator had the authority to grant or deny such requests,

§ 39–4–108(6) & (7), 16B C.R.S. (1982), the administrator's initial valuations were preliminary in nature. Six airline companies (American, Delta, Eastern, Ozark, Republic, and Western), however, did not challenge the administrator's initial valuations and, therefore, these valuations became final as of May 26, 1982. Five airline companies (Continental, Frontier, Texas International, Trans World, and United) did challenge the administrator's valuations for assessment and petitioned the administrator to correct or change the valuations, with the result that these valuations were delayed until July 30, 1982, the date on which the property tax administrator adjusted the valuations and sent out "Notices of Adjusted Valuations" to the five airline companies and the respective counties affected by the adjusted valuations. Since the five airlines did not seek further review of the adjusted valuations by appealing to the Board of Assessment Appeals, as they had a right to do pursuant to section 39–4–108(8), 16B C.R.S. (1982), the assessment process for 1982 property taxes was finalized for these five airlines as of July 30, 1982.

The airlines, taking a different view of the assessment process, argue that the valuations for assessment were not completed until September 21, 1982, when the State Board of Equalization approved the abstracts of assessment submitted by the county assessors. *See* § 39–9–105(1), 16B C.R.S. (1982). We find this argument unpersuasive. The duties of the Board of Equalization, as applicable to this case, were outlined in article X, § 15 of the Colorado Constitution as follows:

> As may be prescribed by law, the state board of equalization shall review the valuations determined for assessment of taxes upon the various classes of real and personal property located in the several counties of the state, and shall raise, lower and adjust the same, to the end that all valuations for assessment of taxes shall be just and equalized; provided, however, that said state board of equalization shall have no power of original assessment.[8]

8. In September 1982 the Board of Equalization

consisted of the Governor, State Auditor, State

In contrast to assessment, which consists of placing a valuation on a particular piece of property belonging to a particular taxpayer, the duty of the State Board of Equalization is to equalize the assessed valuations of classes and subclasses of property on a statewide basis by adjusting the total valuations placed upon particular classes or subclasses of property. We recognized this distinction between assessment and equalization in *Lamm v. Barber*, 192 Colo. 511, 521, 565 P.2d 538, 545 (1977), where we stated:

> Assessment is the act of placing a value for tax purposes upon the property of a particular taxpayer. Equalization, on the other hand, is the act of raising or lowering the total valuation placed upon a class, or subclass, of property in the aggregate. Equalization deals with all the property of a class or subclass within a designated territorial limit, such as a county, without regard to who owns the individual parcels making up the class or subclass. Assessment relates to individual properties; equalization relates to classes of property collectively.

This distinction between assessment and equalization finds further support in the respective statutory responsibilities of the administrator, the county assessors, and the State Board of Equalization regarding the valuation of public utility property, including that of airline companies, at the time of the events in question. Section 39–2–109(1)(a), 16B C.R.S. (1982), imposed on the administrator the duty of valuing airline property in the manner outlined in section 39–4–102, 16B C.R.S. (1982). In contrast, the county assessor was not authorized to value airline property, but rather was required to receive the assessments made by the administrator and to enter those amounts on the tax roll. § 39–4–107, 16B C.R.S. (1982). Nor was the State Board of Equalization empowered to value airline property for assessment purposes.

The board's duty was to examine and review the valuations for assessment of the various classes and subclasses of taxable real and personal property located in the several counties of the state and to raise or lower the aggregate valuation for a particular class or subclass of property. § 39–9–103(1), 16B C.R.S. (1982).

█ In light of the long-standing distinction between assessment and equalization, we cannot accept the airline companies' claim that the valuations for assessment were not completed until September 21, 1982, when the State Board of Equalization approved the abstracts of assessment submitted by the county assessors. On the contrary, the valuations for assessment were completed for six airline companies on May 26, 1982, when the administrator notified them and the county assessors of the valuations and the six airline companies did not thereafter challenge the valuations. In the case of the five other airline companies, the valuations for assessment were completed on July 30, 1982, when the administrator notified them and the county assessors of the adjusted valuations for assessment that resulted from the companies' challenges to the initial assessment and the companies did not seek further review of the adjusted valuation. In both instances, the valuations for assessment were completed prior to September 3, 1982, the date on which 49 U.S.C.App. § 1513(d) became effective.

### B.

█ Having determined that the valuations for assessment were completed prior to September 3, 1982, the next question is whether the assessments were prohibited by 49 U.S.C.App. § 1513(d)(1)(A), which prohibits a state from assessing air carrier transportation property "at a value that has a higher ratio to the true market value of the air carrier transportation property" than the ratio applicable to other commer-

---

Treasurer, Secretary of State, and Attorney General. Colo. Const. art. X, § 15, 1A C.R.S. (1980). Effective December 30, 1982, the composition of the Board was changed to the Governor or his designee, the Speaker of the House of Representatives or his designee, the President of the Senate or his designee, and two members appointed by the Governor with the consent of the Senate. The constitutional duties of the Board, however, remained substantially the same as before. Colo. Const. art X, § 15(1)(b), 1A C.R.S. (1988 Supp.).

cial and industrial property of the same type in the same assessment jurisdiction. The federal statute is silent on whether it was intended to apply to assessments already completed prior to September 3, 1982, or only to assessments made on or after the effective date of the statute, and our review of the legislative history yields no indication whatever of any legislative intent to accord retroactive effect to the statute. *See Joint Explanatory Statement of the Committee of Conference*, 1982 U.S.Code & Admin.News 1190, 1484 (no mention whether 49 U.S.C.App. § 1513(d)(1)(A) applicable to assessments made and completed prior to effective date of statute). In the absence of any manifest expression of congressional intent to accord retroactive effect to 49 U.S.C.App. § 1513(d)(1)(A), we decline to read such a provision into the statute.

Colorado's right to assess, levy, and collect taxes for use in the conduct of its governmental operations is an essential attribute of its sovereignty, subject of course to the constraints of the federal constitution. *E.g., Bode v. Barrett*, 344 U.S. 583, 73 S.Ct. 468, 97 L.Ed. 567 (1953); *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 4 L.Ed. 579 (1819); *see Western Air Lines v. Board of Equalization of South Dakota*, 480 U.S. 123, 107 S.Ct. 1038, 94 L.Ed.2d 112 (1987) (question of whether South Dakota tax on airline flight property constituted "in lieu" property tax within meaning of 49 U.S.C.App. § 1513(d) (3), and thus exempt from discrimination prohibition of § 1513(d)(1), was governed by federal law). Retroactive application of subparagraph (A) of § 1513(d)(1) to the 1982 property taxes assessed on the airlines' properties would thwart Colorado's reasonable expectation of, and inchoate right to, tax revenues based on assessments made and completed in accordance with state law prior to the date on which the federal legislation came into being.

Relying on the basic rule of statutory construction that "a law is presumed, in the absence of clear expression to the contrary, to operate prospectively," *Hassett*, 303 U.S. at 314, 58 S.Ct. at 564, we read the statutory prohibition against disparate assessment of air carrier transportation property as addressing future assessments not yet completed prior to September 3, 1982, rather than past assessments already made and completed. *See Arkansas–Best Freight System, Inc. v. Cochran*, 546 F.Supp. 904 (M.D.Tenn.1981) (court construes section 31 of Federal Motor Carrier Act of 1980, which prohibits an assessment of motor carrier property at a higher ratio to true market value than the ratio applicable to other commercial and industrial property, as applicable to all assessments actually made after the effective date of federal statute). Because the assessments in this case were completed in accordance with Colorado law prior to September 3, 1982, and because the federal statute does not provide for retroactive application, we conclude that the 1982 assessments were not prohibited by 49 U.S.C.App. § 1513(d)(1)(A).

### C.

We next consider whether the taxing authorities were prohibited from levying and collecting the 1982 property taxes by reason of subparagraph (B) of 49 U.S.C.App. § 1513(d)(1), which provides that "a State or subdivision of a State may not … levy or collect a tax on an assessment that may not be made under subparagraph (A) of this paragraph." We conclude that the taxing authorities were not prohibited from levying and collecting on the 1982 taxes already assessed against the airlines.

When statutory language is clear and unambiguous, the statute should be enforced as written, since the statutory language itself is the best indicator of legislative intent or purpose. *See, e.g., United States v. Ron Pair Enterprises, Inc.*, —— U.S. ——, ——, 109 S.Ct. 1026, 1029, 103 L.Ed.2d 290 (1989); *Turkette*, 452 U.S. at 580, 101 S.Ct. at 2527; *Caminetti*, 242 U.S. at 485, 37 S.Ct. at 194. Subparagraph (B) of § 1513(d)(1) unequivocally prohibits a state and its subdivisions from levying or collecting a tax on an assessment that was impermissibly made under § 1513(d)(1)(A). Subparagraph (B), as so read, is not mere

statutory surplusage. On the contrary, subparagraph (B) operates as a supplement to subparagraph (A) by making explicit what would otherwise be left only to inference—namely, when a state places a valuation for assessment on air carrier transportation property that is violative of subparagraph (A), the state is prohibited from taking further action to levy or collect any taxes based on the impermissible assessment. Subparagraph (B) thus closes a statutory gap by providing a clear sanction for assessments violative of subparagraph (A) and, to that extent, serves a function consistent with the overall structure and purpose of the statutory scheme.

It follows from our interpretation of subparagraph (B) that if an assessment does not violate subparagraph (A), then the levy and collection of a tax on such an assessment is not within the prohibition of subparagraph (B). As previously discussed, the 1982 assessments did not violate § 1513(d)(1)(A), and, consequently, the levy and collection of such taxes, even though subsequent to September 3, 1982, were not prohibited by § 1513(d)(1)(B).

### D.

■ We next address whether the taxing authorities were prevented from levying and collecting the 1982 property taxes by virtue of subparagraph (C) of 49 U.S.C. App. § 1513(d)(1), which prohibits a state or its subdivision from levying or collecting an "ad valorem property tax on air carrier transportation property at a tax rate that exceeds the tax rate applicable to commercial and industrial property in the same assessment jurisdiction." We conclude that the levy and collection of the 1982 taxes did not violate § 1513(d)(1)(C).

Both the taxing authorities and the airline companies concede that the 89.261 mill levy was applied to all property in Denver County, whether airline property or other commercial and industrial property. For purposes of § 1513(d)(1)(C), therefore, the 1982 "tax rate" applicable to airline proper-

ty did not exceed the tax rate applicable to commercial and industrial property in Denver County. The airline companies nonetheless contend that, even though the 89.-261 mill levy was the same for all property, the mill levy was merely a nominal tax rate and that § 1513(d)(1)(C) is directed at discrimination in the "effective tax rates"— *i.e.*, the rates established by comparing the ratios between the nominal tax rate and classes of properties assessed at different levels of value. Employing this proposed construction of subparagraph (C), the airlines claim that the 1982 effective tax rate for airline property, which was assessed at a 1981 level of value, was greater than the effective tax rate applicable to other commercial and industrial property, which was assessed at a 1973 level of value. We reject the airlines' claim.

The airline companies' proposed construction of subparagraph (C) of § 1513(d)(1), in our view, would render subparagraph (B) devoid of function or purpose. Subparagraph (A) prohibits discriminatory assessments, while subparagraph (B) prohibits the levy and collection of taxes based on discriminatory assessments. If, as the airlines argue, the term "tax rate" in subparagraph (C) were to be construed to mean the "effective tax rate" resulting from a disparate assessment violative of subparagraph (A), the prohibition of subparagraph (C) would be nothing more than a mere repetition of subparagraph (B).

We decline to adopt a construction that creates a mere statutory redundancy, especially when, as here, there is a reasonable construction that gives effect to all the subparagraphs of § 1513(d)(1). *See, e.g.,* *Pueblo of Santa Ana,* 472 U.S. at 249, 105 S.Ct. at 2594; *Hynson, Westcott and Dunning, Inc.,* 412 U.S. at 633, 93 S.Ct. at 2485; *Menasche,* 348 U.S. at 538–39, 75 S.Ct. at 519–20. We read subparagraph (C) of § 1513(d)(1) as prohibiting the application of tax rates on airline property that exceed the authorized rates applicable to commercial and industrial property in the same assessment jurisdiction. Since the 1982 tax

rate applied to airline property did not exceed the tax rate applied to other commercial and industrial property in the same assessment jurisdiction, the levy and collection of the 1982 property taxes did not violate 49 U.S.C.App. § 1513(d)(1)(C).[9]

## IV.

In summary, we hold as follows: that the 1982 Colorado property tax assessments were completed prior to September 3, 1982, the effective date of 49 U.S.C.App. § 1513(d); that 49 U.S.C.App. § 1513(d)(1)(A) does not retroactively apply to assessments completed prior to the effective date of the statute; that 49 U.S.C. App. § 1513(d)(1)(B) did not prohibit the levy and collection of the 1982 property taxes subsequent to the effective date of the federal legislation, since the assessments were completed prior to the effective

date of the statute; and that the 1982 tax rate applicable to airline property did not exceed the tax rate applicable to other commercial and industrial property and thus did not violate 49 U.S.C.App. § 1513(d)(1)(C). We accordingly reverse the judgment of the court of appeals and remand the case to that court with directions to reinstate the judgment of the district court.

9. In arguing that § 1513(d)(1)(C) prohibits differences in "effective tax rates" between airline property and other commercial and industrial property, even though the tax rates are nominally the same, the airlines rely on *Burlington Northern Railroad Co. v. Department of Revenue*, 570 F.Supp. 585 (W.D.Wis.1983), *modified* 604 F.Supp. 1575 (W.D.Wis.1985). In that case, the court held that Wisconsin's taxing scheme violated section 306 of the Federal Railroad Revitalization and Regulatory Reform Act of 1976, 49 U.S.C. § 11503(b)(3) (1982), which parallels the provisions of 49 U.S.C.App. § 1513(d)(1)(C) and prohibits a state from levying or collecting an ad valorem property tax on rail transportation property at a rate that exceeds the tax rate applicable to commercial and industrial property in the same assessment jurisdiction. We do not view the *Burlington Northern* case as persuasive authority on the question whether 49 U.S.C.App. § 1513(d)(1)(C) was violated under the particular circumstances of this case.

Much of the discussion in *Burlington Northern* was devoted to resolving whether the "assessment jurisdiction" for purposes of the Railroad Revitalization and Regulatory Reform Act was the State of Wisconsin or local counties and municipalities. No such question is present here, since it is undisputed that it was the City and County of Denver that levied and collected the ad valorem property tax for purposes of any arguable § 1513(d)(1)(C) violation.

Moreover, the court in *Burlington Northern* placed substantial emphasis on Wisconsin's assessment of rail transportation property at 100%

of market value, while assessing other commercial and industrial property at 80% of fair market value, 604 F.Supp. at 1580–81, and on the state's omission of rail transportation property from a state tax credit system, while giving tax credits to other commercial and industrial property, 570 F.Supp. at 593. The disparate assessment in *Burlington Northern* resulted in the assessment of rail transportation property at a value that had a higher ratio to true market value than the ratio applicable to other commercial and industrial property and, to that extent, violated the disparate assessment prohibition of § 11503(b)(1) of the Railroad Revitalization and Regulatory Reform Act. 604 F.Supp. at 1580.

Finally, reading an "effective tax rate" concept into 49 U.S.C.App. § 1513(d)(1)(C) would require that we apply the disparate assessment provision of § 1513(d)(1)(A) retroactively to the facts of this case, for only by retroactive application could a different "effective tax rate" for airline property be established for the 1982 property taxes. As we have noted in part III B, *supra*, there is no basis for such a retroactive application of the disparate assessment prohibition of § 1513(d)(1)(A). We agree in this respect with the observation of the court in *Arkansas–Best Freight System, Inc. v. Cochran*, 546 F.Supp. 904 (M.D.Tenn.1981). In construing section 31 of the Federal Motor Carrier Act, which parallels the text of 49 U.S.C.App. § 1513(d)(1)(A), the court stated that the doctrine of federal supremacy requires the application of the Motor Carrier Act in the year it took effect "as to all assessments actually made after [the statute's] effective date." 546 F.Supp. at 912.